## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Tommy Turtle Lanes, Inc., and <br> Thomas T. Kessler, <br><br> Plaintiffs, <br><br> v. <br><br> North Pointe Insurance Company, <br><br> Defendant. | Civil No.: <br><br> **COMPLAINT** |

**COME NOW** Plaintiffs, Tommy Turtle Lanes, Inc. ("Tommy Turtle Lanes") and Thomas T. Kessler ("Kessler"), and for their causes of action against the above named Defendant, North Pointe Insurance Company ("North Pointe"), hereby allege and state as follows:

I.

Plaintiff Tommy Turtle Lanes is a corporation formed under the laws of the State of North Dakota, with its principal place of business in Bottineau, North Dakota.

II.

Plaintiff Kessler is an individual residing in Bottineau, North Dakota and is the sole shareholder of Tommy Turtle Lanes, Inc.

III.

Defendant North Pointe is a corporation formed under the laws of the State of Michigan with its principal place of business in Southfield, Michigan.

IV.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and that the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of costs and interest.

V.

Tommy Turtle Lanes owned and operated a bowling alley and restaurant located at 403 11th Street West in Bottineau, North Dakota.

VI.

Kessler served as the President of Tommy Turtle Lanes in a full-time capacity was its manager and was an employee and depended upon Tommy Turtle Lanes' revenue to earn a living.

VII.

North Pointe Insurance is engaged in the business of marketing and selling insurance in the State of North Dakota.

VIII.

To protect itself against loss, Tommy Turtle Lanes had obtained an insurance policy bearing the policy number NPD30767 from North Pointe.

IX.

The initial effective date of the policy of insurance was from November 17, 2010 to November 17, 2011. For this policy, Tommy Turtle Lanes paid a premium to North Pointe Insurance.

X.

Because of Kessler's role with Tommy Turtle Lanes, and his dependence on its income to continue to earning a living, the policy issued by North Pointe was not intended solely to benefit to Tommy Turtle Lanes but was also intended to benefit Kessler personally as its primary shareholder and company President.

XI.

Under the insurance policy, North Pointe Insurance Company was obligated to provide coverage for losses arising out of damage to the building containing the bowling alley and for damage to any business property located inside the bowling alley. In addition, North Pointe was also obligated to provide coverage for the loss of business income as the result of any damage to the building or its contents.

XII.

At all times relevant, Tommy Turtle Lanes, along with its officers and employees, complied in all respects with the terms and conditions of its policy of insurance with North Pointe.

XIII.

On July 19, 2011, Tommy Turtle Lanes became the victim of a malicious arson attempt resulting in the bowling alley in Bottineau catching fire and becoming totally destroyed.

XIV.

As a result of the fire, Tommy Turtle Lanes was effectively out of business pending reconstruction of the bowling alley.

XV.

North Pointe, wrongfully, and in bad faith, investigated the fire loss, improperly adjusted the claim, and investigated the fire loss with an eye towards denying, delaying, or minimizing the amount of benefits due to Tommy Turtle Lanes under the policies of insurance.

XVI.

North Pointe, acting through its agents and employees, wrongfully, and in bad faith has refused and continues to refuse to comply with the terms of the policy of insurance and pay Tommy Turtle Lanes the entire sums of money which have been due and owing since the date of the fire.

XVII.

North Pointe, through their agents and employees, has acted wrongfully and in bad faith by knowingly misrepresenting or concealing to Tommy Turtle Lanes pertinent facts or relevant policy provisions relating to coverage under the policies.

XVIII.

As a direct and proximate result of North Pointe's misrepresentations, wrongful and bad faith handling of Tommy Turtle Lanes' claim, Tommy Turtle Lanes has been deprived of the total benefits due to it under the policies of insurance which amount to no less than $250,000.00.

XIX.

As a direct and proximate result of North Pointe's misrepresentations, wrongful and bad faith handling of Tommy Turtle Lanes' claim, Kessler has been personally deprived of his ability to earn a living through the continued operation of Tommy Turtle Lanes.

XX.

In doing the acts described above, North Pointe knew that it would cause financial injury to Tommy Turtle Lanes and carried out their investigation and handling of its claim with a conscious disregard of its rights under the policies of insurance; that North Pointe subjected Tommy Turtle Lanes to cruel and unjust hardship in a conscious disregard of its rights under the policies of insurance and have made misrepresentations to Tommy Turtle Lanes, and that North Pointe, had concealed and misrepresented material facts from Tommy Turtle Lanes.

XXI.

In doing the acts described above, North Pointe knew that it would cause financial injury to Kessler and carried out their investigation and handling of its claim with a conscious disregard of his rights as a third-party beneficiary under the policies of insurance, that North Pointe subjected Kessler to cruel and unjust hardship, resulting in severe emotional distress, in a conscious disregard of his rights as a third-party beneficiary under the policies of insurance.

XXII.

As a direct and proximate result of the acts described above, North Pointe has caused Tommy Turtle Lanes to incur attorney's fees in seeking its just benefits under its policy of insurance and have caused Tommy Turtle Lanes additional loss of business income in an amount in excess of $100,000.

XXIII.

As a direct and proximate result of the acts described above, North Pointe has caused Kessler to incur attorney's fees in seeking benefits as a third-party beneficiary under the policy of insurance and has caused Kessler to suffer a loss of personal income in an amount in excess of $100,000.

## COUNT ONE – BREACH OF CONTRACT

### XXIV.

Tommy Turtle Lanes and Kessler hereby incorporate all of the allegations set forth in paragraphs I through XXIII as if they were fully set forth herein.

### XXV.

Tommy Turtle Lanes has paid all premiums under its policy of insurance and performed all other conditions which the policy required it to perform.

### XXVI.

That North Pointe breached the policy of insurance by refusing and continuing to refuse to provide adequate benefits for Tommy Turtle Lanes' legitimate and lawful claim.

### XXVII.

As a direct result of North Pointe's breach of the insurance policy, Tommy Turtle Lanes has suffered, and continues to suffer harm as alleged herein including, but not limited to the loss of benefits as provided by the policy in the amount of at least $250,000 and the loss of premiums paid for such policy of insurance.

### XXVIII.

As a direct result of North Pointe's breach of the insurance policy, Kessler has suffered, and continues to suffer harm as alleged herein including, but not limited to the loss of personal income in the amount of at least $100,000.

## COUNT TWO – BAD FAITH

### XXIX.

Tommy Turtle Lanes hereby incorporates all of the allegations set forth in paragraphs I through XXXVIII as if they were fully set forth herein.

XXX.

In investigating Tommy Turtle Lane's claims under both policies, North Pointe through its agents and employees, acted unreasonably in refusing to provide adequate benefits under the policies of insurance to Tommy Turtle Lanes knowing that it had inadequate grounds for doing so or refusing coverage on such claim and did so in a reckless disregard of all the facts known to it, its agents, and employees.

XXXI.

In investigating Tommy Turtle Lanes' claim, North Pointe, through its agents, has provided inadequate or reasonable benefits without having adequate or reasonable grounds for doing so and with knowledge that it had inadequate grounds to provide insufficient benefits to Tommy Turtle Lanes in spite of the terms and provisions of the policies of insurance.

XXXII.

That North Pointe breached its duty to Tommy Turtle Lanes to adjust, adjudicate, and evaluate its claim in good faith and to investigate every available source of information, set out to collect the minimum facts necessary to support either a denial of the claim or delay the payment of the claim and has failed to either contact or pay heed to individuals having knowledge of this claim or to review documents necessary for the proper adjudication and adjustment of the claim.

XXXIII.

Had North Pointe conducted a good faith investigation, it would have received information showing that Tommy Turtle Lanes was entitled to a greater amount of benefits under the policy than what has been provided so far.

XXXIV.

North Pointe, acting through its agents and employees, recklessly and or intentionally delayed the investigation and payment of Tommy Turtle Lane's claim.

XXXV.

By reason of the wrongful, reckless, malicious, fraudulent, and oppressive acts of North Pointe Insurance, Tommy Turtle Lanes and Kessler will be entitled to amend their Complaint to assert a claim for punitive and exemplary damages.

XXXVI.

That North Pointe, by providing insufficient benefits to Tommy Turtle Lanes, and having knowledge that it had no justification for doing so, has purposely forced Tommy Turtle Lanes to retain the services of counsel and initiate this action in order to obtain the benefits of which Tommy Turtle Lanes has and always was entitled.

XXXVII.

That North Pointe, by providing insufficient benefits to Tommy Turtle Lanes, and having knowledge that it had no justification for doing so, has purposely forced Kessler to retain the services of counsel and initiate this action in order to obtain the personal income he would have received had North Pointe satisfied its obligations under the policies of insurance.

XXXVIII.

That North Pointe, in its entire handling of Tommy Turtle's claim, has acted in a conscious disregard of Tommy Turtle's rights as an insured and has intentionally breached the implied covenant of good faith and fair dealing.

XXXIX.

That North Pointe, in its entire handling of Tommy Turtle's claim, has acted in a conscious disregard of Kessler's rights as an third-party beneficiary and has intentionally breached the implied covenant of good faith and fair dealing.

XXXX.

As a direct result of North Pointe's wrongful and bad faith delay in providing benefits, Tommy Turtle Lanes has been subject to lost business income, loss of reputation and standing in the community all to its detriment.

XXXXI.

As a direct result of North Pointe's wrongful and bad faith delay in providing benefits to Tommy Turtle Lanes, Kessler has been subject to lost personal income, severe emotional distress, and loss of reputation and standing in the community all to his detriment.

XXXXII.

As further evidence of North Pointe's bad faith, North Pointe committed the acts referred to herein, without just cause and as part of a general business practice of:

a. Knowingly misrepresenting to Tommy Turtle Lanes, or its agents, pertinent facts or policy provisions relating to coverage at issue;

b. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under the insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policies; and

d. Failing to affirm or deny coverage of claims within a reasonable time after a claim has been submitted;

The acts referred to above are violations of N.D.C.C. Chapter 26.1 evidencing North Pointe's breach of the covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiffs Tommy Turtle Lanes and Kessler request the following relief:

1. Awarding Tommy Turtle Lanes and Kessler compensatory damages including attorney's fees against North Pointe in an amount in excess of seventy-five thousand dollars ($75,000);

2. Determining and adjudicating the rights and liability of the parties under the policy with North Pointe;

3. Determining and adjudicating that North Pointe must adequately compensate Tommy Turtle Lanes for its loss that occurred on July 19, 2011 and that such compensation is equal to all coverage provided by North Pointe plus interest;

4. Determining and adjudicating that North Pointe must adequately compensate Kessler for his loss of personal income and emotional distress suffered that was the result of North Pointe's failure to adequately compensate Tommy Turtle Lanes for its loss that occurred on July 19, 2011;

5. Grant Tommy Turtle Lanes and Kessler leave to amend its Complaint to assert a claim for punitive and exemplary damages; and

6. Award of all attorney's fees, disbursements, interest at the legal rate from July 19, 2011 and such other and further relief as the Court deems just and proper.

Dated this _31_ day of January, 2013.

_____
Richard A. Clapp, ND ID #03292
John A. Olson, ND ID #06880
PEARSON CHRISTENSEN & CLAPP, PLLP
P.O. Box 5758 / 24 N. 4th Street
Grand Forks, ND 58206-5758
Phone: (701) 775-0521 / Fax: (701) 775-0524
rclapp@grandforkslaw.com
ATTORNEYS FOR PLAINTIFF

## VERIFICATION

STATE OF NORTH DAKOTA      )
                           )SS
COUNTY OF GRAND FORKS      )

Thomas T. Kessler, the President of Tommy Turtle Lanes, Inc., being first duly sworn on oath, deposes and states: That he is the President of the Plaintiff in the foregoing and within action; that he has read the foregoing Complaint, and the same is true of his own knowledge, except as to those matters stated therein on information and belief, and as to those matters he believes it to be true and correct.

*Thomas T. Kessler*

Thomas T. Kessler
President of Tommy Turtle Lanes, Inc

Subscribed and sworn to before me on the __1st__ day of __February__, 2013, in the State of North Dakota, County of Grand Forks.

DENISE HAGEN
Notary Public
State of North Dakota
My Commission Expires Nov. 22, 2014

*Denise Hagen*
Notary Public